FILED
10:53 am, 7/14/21
U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRAVIS SALWAY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:20-CV-115-MLC |
| | ) |
| ERIC NORRIS, | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant Eric Norris's (hereinafter, "Defendant") *Motion for Summary Judgment* filed on June 14th, 2021. ECF Doc. 23 and 24. Travis Salway (hereinafter, "Plaintiff") responded on June 28th, 2021. ECF Doc. 25.[1] The Court held a hearing on this matter on July 13th, 2021. Having now reviewed all filings, heard argument, and being fully apprised of the facts and circumstances of this Motion, the Court finds the following:

### Background

Plaintiff brings this case pursuant to 42 U.S.C. §1983. Ultimately, there is little dispute among the parties as to what happen in the in the early hours of August 5, 2018. However, for purposes of reviewing a summary judgment motion, the Court will consider the evidence in the light most favorable to the non-moving party. Plaintiff and his wife

---

[1] The Court suggests Plaintiff review Local Rule 10.1. Said rule requires all filings in this district be "typed, double spaced, single-sided, and on eight and one-half (8½) x eleven (11) inch paper, of standard weight, with a one (1) inch margin on all sides."

1

were with friends at a local bar in Cheyenne, Wyoming after attending a banquet. A few hours after arriving at the bar, Plaintiff and another bar patron had an altercation over some racial slurs that were said to an unnamed third-party. Plaintiff, angered by the slurs, confronted the bar patron and asked him to step outside. The invitation was never accepted, but the owner of the bar demanded that Plaintiff leave.

Plaintiff's wife was off with a friend and did not see the altercation but was informed her husband had been kicked out. As Plaintiff and his wife exited the bar they began arguing. His wife was upset that he was required to leave the bar. The argument drew the attention of the bar owner and other bar patrons. Eventually, this argument escalated to the point that the bar owner and other bar patrons thought it best to intervene. Quickly an altercation broke out between Plaintiff, the bar owner, and the patrons. Plaintiff was ultimately subdued and held down by the crowd until police arrived. During that period, Plaintiff suffered an injury to one of his fingers.

Officers from the City of Cheyenne Police Department arrived minutes later. Three unnamed officers were first to respond. The three officers, after a struggle in which one of the officers was kicked by Plaintiff and another delivered several strikes to Plaintiff's body, handcuffed Plaintiff and left him on the ground. Defendant arrived at the scene shortly after Plaintiff was handcuffed. By that time numerous other officers and paramedics had also arrived. Due to Plaintiff's injury, the officers at the scene thought it best to place Plaintiff on a gurney for transport via an ambulance. This is when the conduct at issue took place.

While being placed on the gurney, Plaintiff began kicking his legs, screaming, and raising his head upwards and towards Defendant. Why Plaintiff acted this way, and what

2

he was trying to accomplish, is disputed by the parties. Plaintiff contends that he was experiencing significant pain from his finger injury arising from the fact that he was handcuffed behind his back and laying on his injured finger on the gurney. There is no indication that he communicated this fact to the officers, but rather began screaming and kicking. What is not disputed, is that within the span of a few moments after Plaintiff began kicking and screaming, Defendant struck Plaintiff in the face twice. First, with an open hand slap. Next, with a closed fist. Those two strikes, more specifically the second strike, are at the center of Plaintiff's excessive force claims. Plaintiff also referenced that he was shoved onto the gurney in his briefing, but seemed to admit during the oral argument that it was not clear whether Plaintiff stumbled or tripped while the officers were assisting him onto the gurney. The video does not support that he was pushed or shoved, and it does appear that he stumbled to some degree. There is no allegation that he was injured in this process.

Defendant argues that he is entitled to qualified immunity and that Plaintiff has failed to meet his burden of showing Defendant did not have probable cause to arrest Plaintiff or that Defendant violated a clearly established right. Defendant also argues his actions were reasonable, in that he had probable cause and used an appropriate amount of force in executing the legal arrest of Plaintiff.

**Law**

1. **Summary Judgment**

Summary Judgment requires the movant show that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. R. Civ. P. 56(c). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial". *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Id*.

2. **Qualified Immunity**

In the Tenth Circuit, once a defendant asserts the affirmative defense of qualified immunity, the burden then shifts to the plaintiff to demonstrate (1) that on the facts alleged the defendant violated his or her constitutional rights, and (2) that the right was clearly

established at the time of the alleged unlawful activity. *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018).

The Constitution says everyone is entitled to equal protection of the law – even at the hands of law enforcement. *Jamison v. McClendon*, 476 F. Supp. 3d 386, 391 (S.D. Miss. 2020). Over the decades, however, courts have formulated a legal doctrine to protect law enforcement officers from having to face any consequences for some alleged wrongdoing. *Id.* The doctrine is called "qualified immunity." *Id*. Although Section 1983 made no mention of defenses or immunities, the Supreme Court read it in harmony with general principles of tort immunities and defenses rather than in derogation of them. *Id.* (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1870, 198 L. Ed. 2d 290 (2017)). It reasoned that "[c]ertain immunities were so well established in 1871 ... that 'we presume that Congress would have specifically so provided had it wished to abolish' them." *Id*. (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1870, 198 L. Ed. 2d 290 (2017)).

Once, qualified immunity protected officers who acted in good faith. The doctrine now protects all officers, no matter how concerning their conduct, if the law they broke was not "clearly established." *Id*. This "clearly established" requirement, much like qualified immunity itself, is not in the Constitution or a federal statute. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). In case "clearly established" was not enough of a burden, the Supreme Court has also added the words "beyond debate". *See Ziglar*, 137 S. Ct. at 1870. In other words, "for the law to be clearly established, it must have been 'beyond debate' that [the officer] broke the law." *Jamison*,

476 F. Supp. 3d at 405. Building on this legal fiction, to allegedly "balance" the interests of those claiming to have their constitutional rights violated with the burden of government officials in defending those cases, courts extended qualified immunity to protect "all but the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir.2001).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Strepka v. Miller*, 28 Fed.Appx. 823, 830 (10th Cir.2001). Although a plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law," he or she "need not show that the specific action at issue has previously been held unlawful." *Riggins v. Goodman*, 572 F.3d 1101, 1111 (10th Cir. 2009). Fifth Circuit Judge Don Willet pointed to the obvious:

> "Section 1983 meets Catch-22. Plaintiffs must produce precedent even as fewer courts are producing precedent. Important constitutional questions go unanswered precisely because no one's answered them before. Courts then rely on that judicial silence to conclude there's no equivalent case on the books. No precedent = no clearly established law = no liability. An Escherian Stairwell. Heads government wins, tails plaintiff loses."

*Jamison*, 476 F. Supp. 3d at 408 (citing *Zadeh v. Robinson*, 928 F.3d 457, 479–80 (5th Cir. 2019)).

If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. Further, courts are permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first considering the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

3. **Unreasonable Seizure and Excessive Force**

A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied. *Scott*, 550 U.S. at 381 (2007). One's freedom of movement is terminated if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave and the police have applied physical force, however slight, or the person has submitted to a show of authority by the police. *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

In completing a seizure, the courts have made it clear that the Fourth Amendment requires an examination of the reasonableness of the manner in which a search or seizure was conducted. A seizure is unreasonable if done without a warrant or without probable cause. *See Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Even if an officer has probable cause or a warrant, the officer must also use a reasonable amount of force in accomplishing the seizure.

A claim of excessive force in the course of making a "seizure" of the person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Id*. In order for Plaintiff to recover on a Fourth Amendment excessive force claim, he must show (1) that the officers used greater force than would have been reasonably necessary to effect a

7

lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional. *Cortez v. McCauley*, 478 F.3d 1108, 1129 n. 25 (10th Cir. 2007). Reasonableness of the use of force is viewed from the perspective of a reasonable officer on the scene and includes an allowance for the fact that officers are forced to make split second judgments in tense, uncertain, and rapidly changing situations. *Id*. The factors employed to determine reasonableness are the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest. *McGregor v. City of Olathe, KS,* 158 F. Supp. 2d 1225, 1236 (D. Kan. 2001).

## Discussion

**1. Evidentiary Issues**

First, the Court must address Plaintiff's objections to exhibits Defendant attached to his motion. Defendant attached six exhibits to his motion. *See* ECF Doc. 24. Exhibit A is a 48-page internal investigation done after Plaintiff's wife filed a complaint against Defendant. The exhibit contains numerous police reports, witness statements, letters, and an investigator summary. Exhibits B through E are videos taken from security cameras and police cameras, and Exhibit F is part of Defendant's deposition. For obvious reasons, Plaintiff specifically objects to Exhibit A.

Tenth Circuit precedent establishes that courts may only consider uncontested facts and admissible material when ruling on a motion for summary judgment. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir.2010). While the form of the evidence

produced need not be admissible at trial, "the content or substance of the evidence must be admissible." *Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1320 (D.N.M. 2012). An objection to cited material functions just as an objection at trial, shifting the burden to the proponent "to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note (2010 Amendments). In response to an objection to summary judgment evidence, the proponent of the evidence cannot merely assert that they will be able to produce evidence in an admissible form; rather, they must thoroughly explain the admissible form that they will introduce at trial. *Mitchell*, 842 F. Supp. 2d at 1321.

Defendant has failed to thoroughly explain the admissible form of Exhibit A that he will introduce at trial. In its entirety it is hearsay that does not fall within an exception. As such, the Court has not relied on Exhibit A for any of its analysis in this order. The other exhibits, though, do not pose a problem. Nor were they objected to by Plaintiff.

**2. Qualified Immunity**

    **a. Unreasonable Seizure**

Plaintiff alleges Defendant violated his Fourth Amendment right to be free from an unreasonable seizure by detaining him without a warrant or probable cause. *See* ECF Doc. 1 ¶ 17. Specifically, Plaintiff argues that when officers, including Defendant, arrived on scene Plaintiff was being held down by people who had assault him. Then, allegedly, the officers failed to investigate the situation and wrongfully detained Plaintiff. In order for Plaintiff to overcome the defense of qualified immunity on this claim, he must show (1)

that on the facts alleged Defendant violated Plaintiff's Fourth Amendment rights, and (2) that the right was clearly established, beyond debate, at the time of the alleged unlawful activity. As to Plaintiff's unreasonable seizure claim, the Court finds Plaintiff has failed to carry his burden.

We analyze the constitutionality of a warrantless arrest under the probable cause standard. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime. *Id*. Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. *Id*. When a warrantless arrest is the subject of a §1983 action, the defendant arresting officer is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest" the plaintiff. *Id*. (citing *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)). Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *Id*.

Interestingly, and as Defendant points out, it was not Defendant who arrested Plaintiff. Defendant claims Officer Pendleton was the arresting officer. ECF Doc. 24 at pg 12. While the Court is unaware if Officer Pendleton was in fact the arresting officer, Exhibit D clearly shows Plaintiff was wrestled and eventually handcuffed by three non-party officers before Defendant arrived at the scene. In the hearing on July 13, 2021, Plaintiff agreed he was handcuffed and laying on the ground when Defendant arrived. In other words, Plaintiff had

been seized, for purposes of a Fourth Amendment analysis, before Defendant arrived. Clearly, Defendant cannot be found to have violated Plaintiff's constitutional rights in connection to a seizure if Defendant had nothing to do with it. Because Plaintiff has failed to show such a violation, he has failed to carry his burden of establishing the first prong in overcoming Defendant's qualified immunity defense.

Even assuming, for the sake of argument, that Defendant was not the arresting officer is irrelevant, the Court thinks it is abundantly clear the officers had probable cause. Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. *Romero*, 45 F.3d at 1476. Defendant arrived at the scene to learn Plaintiff had been combative with fellow police officers. So combative that the arresting officers had to strike Plaintiff multiple times and wrestle with him for a few moments before completely subduing him. *See* Exhibit D. Illustrating just how combative Plaintiff was with the arresting officers, he has not brought a single claim against them for striking him several times. Further, all the officers that responded were informed of Plaintiff's violent behavior towards other bar patrons and his wife. Hence why Plaintiff was being held down by multiple people and backup was requested. Even if mistaken, the officers' beliefs establishing the existence of probable cause was reasonable. Without a doubt these facts constitute probable cause for an arrest. With respect to this claim, the Court grants Defendant qualified immunity.

**b. Excessive Force**

Plaintiff alleges Defendant used excessive force during his detention. Specifically, Plaintiff argues the last strike, a punch, from Defendant constitutes an unreasonable amount of force when considering the factors that guide the objective reasonableness analysis. In order for Plaintiff to overcome the defense of qualified immunity on this claim, he must show (1) that on the facts alleged Defendant violated Plaintiff's Fourth Amendment rights, and (2) that the right was clearly established, beyond debate, at the time of the alleged unlawful activity. The Court believes Plaintiff has failed meet his burden and must grant Defendant qualified immunity on this claim.

The alleged facts are that Plaintiff was kicking and screaming when being put on the gurney due to an injury to his finger. Because he was handcuffed behind his back, when he was placed on the gurney he experienced significant pain and struggled to reposition himself. As a result, Defendant struck him twice in the face. Plaintiff argues those two strikes, or specifically the last punch, was unjustified and unreasonable. Defendant disputes this narrative, but for purposes of this evaluation, the Court must look to the facts alleged and do so "in the light most favorable" to Plaintiff.

In addition to showing his rights were violated, Plaintiff must also show that the specific right was clearly established, beyond debate, at the time of the alleged injury. Ordinarily, this is done with support from case law with similar factual scenarios. Defendant argues that, "[t]here is no relevant case that would indicate that striking [Plaintiff] while he was actively resisting and lunging towards [Defendant] constituted

excessive force." ECF Doc. 24 at pg 14. Defendant's argument ignores the fact this analysis is to be done "on the facts as alleged" in the "light most favorable" to Plaintiff. If a defendant in a qualified immunity analysis were allowed to shape the scope of a plaintiff's burden as Defendant is attempting to here, plaintiffs would simply never be able to prove a "right was clearly established."

The question then, viewing the alleged facts in the light most favorable to Plaintiff, is whether it was clearly established, beyond debate, that an officer, who is aware his detainee is injured, drunk, and handcuffed, violates the detainee's rights by striking the detainee twice in the face, even though several police officers are standing next to the detainee, when the detainee leans forward, screams, and thrashes his legs while being place on a gurney.

In his attempt to overcome qualified immunity, Plaintiff has failed to show Defendant violated a "clearly established right" that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015). No case cited or discussed by Plaintiff addresses the rights in question. Although the Court does "not require a case directly on point… existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. Plaintiff first cites *Perea*, contending it stands for the proposition that in the Tenth Circuit, use of some force against a resisting arrestee is justified, but continued and increased use of force after the detainee is subdued is not. *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016). *Perea* does

little in providing a factual scenario similar to ours. It is not alleged Defendant continued to apply, or increased, force against Plaintiff after Plaintiff was subdued. It is alleged that Defendant misinterpreted Plaintiff's kicking and screaming as an attempt to resist, which was met with force. As soon as Plaintiff appeared to stop resisting, Defendant stopped applying force. Also, two strikes to the face in a span of a few seconds is hardly analogous to ten taserings in a two-minute span.

Other cases cited and discussed by Plaintiff results in similar conclusions. *Vette* is a case concerning an officer allowing a police dog to attack an already subdued suspect, along with punching him and hitting him in the face with a dog chain. *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1159 (10th Cir. 2021). Again, although the court unambiguously states that it is clearly established that "officers may not continue to use force against a suspect who is effectively subdued," *Vette* provides no insights as to what a reasonable officer would have understood the law to be when he thought a detainee was resisting.

Most, if not all, of the cases cited by Plaintiff concern a fully subdued detainee having excessive forced applied to him or her. [2] None of the cases cited by Plaintiff are

---

[2] Other cases were cited by Plaintiff that fail to clearly establish, beyond debate, that Defendant broke the law. *See Fancher v. Barrientos*, 723 F.3d 1191 (10th Cir. 2013) (Officer shoots suspect seven times when attempting to steal police car and after a struggle over the officer's service weapon. After first shot the suspect posed no immediate threat.); *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991) (Officers twice kicked, punched, and hit a man with a flashlight without arresting him during a traffic stop. Lacks a "clearly established" analysis.); *McCoy v. Meyers*, 887 F.3d 1034 (10th Cir. 2018) (Detainee was struck more than ten times and placed in a second carotid restraint despite not resisting. Court found it was clearly established in the Tenth Circuit that excessive use of force on subdued individuals is unconstitutional.); *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007) (Detainee accidently removed file from Court house, when attempting to peacefully return with the file he had his shirt torn, was tackled, tasered twice, and beaten without an explanation or warning. Was found no case with similar facts was needed to say a reasonable officer would not believe he could behave this way.); *Herrera v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 361 F. App'x 924 (10th Cir. 2010) (Detainee complied with officers' commands, never was accused of resisting, and

factually similar to the case at hand. Here, Plaintiff admits he was screaming, leaning towards Defendant, and thrashing his legs. ECF Doc. 25 pg 8. Also, as seen in Exhibit D, it is objectively true that Plaintiff, on multiple occasions, had resisted and been confrontational with officers before he started screaming and thrashing about. In response to this admittedly wild behavior, Defendant struck Plaintiff twice. Once Plaintiff stopped leaning forward, screaming and thrashing, Defendant stopped applying force.

Plaintiff argues that the Court should not allow Defendant to escape the totality of the circumstances. Plaintiff points to the fact that Defendant, at the time of the incident, knew Plaintiff had suffered a serious injury to his hand. It is Plaintiff's argument that the knowledge of such an injury should have been considered by Defendant before applying force to what Defendant thought was resistance, such as an objectively reasonable officer would have. However, that argument goes directly to the first prong of the qualified immunity analysis, i.e. whether Plaintiff's Fourth Amendment right was in fact violated. It does not answer whether the right was clearly established. Plaintiff has misunderstood what fact is actually disputed. The dispute is not whether Plaintiff was resisting or not, because he most certainly was. It is fair to say Plaintiff might not agree with this objective fact and the Court is to examine the facts in a light favorable to him. "However, we cannot ignore clear, contrary video evidence in the record depicting the events as they occurred." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1207 (10th Cir. 2017). Further,

---

in return received torn ligaments and a torn meniscus in his left knee. Court found it was clearly established force was excessive in light of detainee's compliance.); *Gouskos v. Griffith*, 122 F. App'x 965, 975 (10th Cir. 2005) (Detainee was slammed and choked despite being fully subdued, handcuffed, and compliant.).

"[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

The dispute, rather, is what Plaintiff's *motive* was for resisting. It is not clearly established in this Circuit that an officer may not apply force to a resisting defendant when the officer knows that defendant is injured. It is not clearly established in this Circuit that the officer may not apply force to a resisting defendant if the defendant is resisting as a result of pain or other disability. To do so would require the officer to make a rapid determination as to the motivation of the defendant in resisting. Such motivations can take many forms, including alcohol intoxication, injury, drug reaction or mental health. While the force used must be reasonable to the degree of resistance, the established law is that force may be applied. Stated differently, there is no clearly established law that an officer may not use non-deadly force against and actively resisting detainee. Plaintiff's claims against Defendant must fail because he was unable to identify clearly established law prohibiting the conduct of Defendant.

Lastly, in his Motion Defendant also argues that regardless of how the Court decides on the applicability of qualified immunity, under the Fourth Amendment he had probable cause to arrest Plaintiff and acted reasonably in doing so. Due to the Court's decision on qualified immunity, it need not address Defendant's additional arguments as they are moot.

**Conclusion**

**IT IS HEREBY ORDERED** that Eric Norris is entitled to qualified immunity concerning all the claims against him in this matter. For that reason, the Motion for Summary Judgment [ECF Doc. 23] is **GRANTED**. This matter is **HEREBY** dismissed with prejudice.

DATED this 14th day of July, 2021

_____
MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE